# Commonwealth of Massachusetts

SUFFOLK, ss.

A true copy Attest:
*Deputy Sheriff Suffolk County*

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. *15 - 2511 F*

CARLA SHEFFIELD,
Personal Representative of the Estate, Plaintiff(s)
of BURRELL RAMSEY-WHITE

v.

CITY OF BOSTON, MATTHEW PIEROWAY, JOEL RESIL, MICHAEL MERLINA-10 and MARY MOES 1-10, Defendant(s)

## SUMMONS

FORWARDED BY THE CITY CLERK TO THE
DEC 15 2015
LAW DEPARTMENT

To the above-named Defendant: CITY OF BOSTON

You are hereby summoned and required to serve upon *MARK F ITZKOWITZ, ESQ. and SARA ELIZABETH BURNS, ESQ.*

plaintiff's attorney, whose address is *175 Federal St, Ste 1425, Boston MA 02110*, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant, Esquire, at Boston, the *seventeenth* day of *November*, in the year of our Lord two thousand *Fifteen*.

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV. P. 1  12M—1/15

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

CARLA SHEFFIELD,                    )
Personal Representative             )
of the Estate of                    )
BURRELL RAMSEY-WHITE,               )
        Plaintiff                   )
                                    )
        v.                          )
                                    )
CITY OF BOSTON, MATTHEW             )
PIEROWAY, JOEL RESIL,               )
MICHAEL MOES 1-10, and              )
MARY MOES 1-10,                     )
        Defendants                  )

SUPERIOR COURT
CIVIL ACTION NO. 15-2511F

RECEIVED

AUG 20 2015

SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

**COMPLAINT**

**JURY TRIAL DEMANDED**

**PARTIES**

1.  The plaintiff, CARLA SHEFFIELD, is an individual who
    resides at 24 Centre Avenue, #1L, Dorchester (Boston),
    Suffolk County, Commonwealth of Massachusetts, who
    brings this action as the Personal Representative of
    the Estate of BURRELL RAMSEY-WHITE, duly appointed by
    Letters of Authority for Personal Representative issued
    by the Suffolk Probate and Family Court in the *Estate*
    *of Burrell Anthony Ramsey-White*, Docket Number
    SU15P2000EA, on August 12, 2015.

2.  The defendant, CITY OF BOSTON, is a municipal
    corporation, duly organized under the laws of the
    Commonwealth of Massachusetts, which is located and has
    a principal place of business in Boston, Suffolk
    County, Commonwealth of Massachusetts, and which

1

operates among its duly constituted governmental departments and agencies the Boston Police Department, which also is located and has a principal place of business in Boston, Suffolk County, Commonwealth of Massachusetts.

3.    The defendant, MATTHEW PIEROWAY, is an individual who at all times material was employed by the defendant, CITY OF BOSTON, as a police officer, and who had a principal place of business at the Boston Police Department in Boston, Suffolk County, Commonwealth of Massachusetts.

4.    The defendant, JOEL RESIL, is an individual who at all times material was employed by the defendant, City of Boston, as a police officer, and who had a principal place of business at the Boston Police Department in Boston, Suffolk County, Commonwealth of Massachusetts.

5.    The defendants, MICHAEL MOES 1-10 and MARY MOES 1-10, are currently unknown to the plaintiff, but during all times material were employed by the defendant, CITY OF BOSTON, in the Boston Police Department, and who have a principal place of business at the Boston Police Department in Boston, Suffolk County, Commonwealth of Massachusetts.

<u>FACTS COMMON TO ALL COUNTS</u>

6.  On August 21, 2012 at 4:00 pm defendants MATTHEW
    PIEROWAY ("PIEROWAY") and JOEL RESIL ("RESIL") reported
    for duty with the Boston Police Department's Anti-Crime
    Unit.

7.  Officers working in the Anti-Crime Unit wore street
    clothes and drove unmarked vehicles.

8.  PIEROWAY and RESIL were assigned to be partners for the
    shift.

9.  PIEROWAY and RESIL received a maroon, unmarked police
    vehicle for the shift.

10. Lights and sirens were located inside the unmarked
    police vehicle.

11. RESIL wore a red Nike t-shirt, shorts, and sneakers.

12. PIEROWAY wore a green shirt with a Boston Celtics logo,
    shorts, and sneakers.

13. At approximately 5:15 pm that day, officers in the area
    of Greenwich Park in Boston observed an individual
    peering into parked vehicles.

14. The individual was described as a black male wearing a
    red t-shirt with the word "Georgia" written across the
    chest.

15. PIEROWAY and RESIL proceeded to the area to assist with
    the investigation of the individual.

3

16. At around this time, BURRELL RAMSEY-WHITE ("BURRELL"), an African American male, was operating a tan Cadillac ("the Cadillac") in the same area.

17. BURRELL wore a white Ralph Lauren polo shirt with thin red stripes.

18. BURRELL did not match the description of the person that had been looking into vehicles.

19. The Cadillac belonged to Jurrell Laronal ("Laronal").

20. PIEROWAY and RESIL saw the Cadillac on West Rutland Square in Boston, Suffolk County, Massachusetts.

21. At 5:41 pm, RESIL ran the Cadillac's license plate.

22. The Boston Police's Computer-Assisted Dispatch information revealed the owner, Laronal, had an outstanding default warrant.

23. PIEROWAY and RESIL—dressed in street clothes— approached the Cadillac parked on West Rutland Square.

24. As PIEROWAY and RESIL walked towards the Cadillac, BURRELL locked the vehicle and drove away.

25. BURRELL drove toward Columbus Avenue.

26. PIEROWAY and RESIL pursued BURRELL.

27. PIEROWAY and RESIL allegedly pursued BURRELL because he left the area before the officers could speak to him.

28. Rule 301 of the Boston Police Department's Rules and Procedures ("Rule 301"), applicable in August, 2012, forbids Police vehicles without operable overhead blue lights from engaging in a pursuit.

29. PIEROWAY and RESIL violated Rule 301 because their vehicle did not have operable overhead blue lights.

30. Rule 301 forbids pursuit ". . . unless the occupants[—not owners—]of the vehicle are known to be wanted for the commission or attempted commission of a violent or life threatening felony."

31. PIEROWAY and RESIL violated Rule 301 because they did not know whether BURRELL had committed the crime associated with the Cadillac's owner or whether BURRELL was wanted for the commission or attempted commission of a violent or life threatening felony.

32. PIEROWAY drove the unmarked police car with sirens and lights activated.

33. BURRELL turned left onto Columbus Avenue.

34. As PIEROWAY and RESIL pursued BURRELL, RESIL announced over the radio that they were pursuing the Cadillac.

35. BURRELL took a left turn onto West Newton Street, followed by a right onto Saint Botolph Street.

36. PIEROWAY and RESIL continued their pursuit.

5

37.   PIEROWAY and RESIL saw a drivers license stuck on the rear window of the Cadillac.

38.   While on Saint Botolph Street, the Boston Police Department Operations Supervisor ordered termination of the pursuit.

39.   BURRELL took a right turn onto Harcourt Street.

40.   Despite the Boston Police Department supervisor's orders to terminate pursuit, PIEROWAY and RESIL continued to operate the lights of their vehicle and pursue the Cadillac.

41.   The order to terminate pursuit was consistent with Rule 301, which prioritizes the safety of the public and officers in pursuit driving situations.

42.   PIEROWAY and RESIL violated Rule 301, which prohibits the operation of lights and following a suspect's vehicle after a pursuit termination is ordered.

43.   BURRELL abandoned the Cadillac where Harcourt Street meets Southwest Corridor Path.

44.   The total distance of PIEROWAY and RESIL's vehicle pursuit was approximately half of one mile.

45.   When BURRELL abandoned his vehicle on Harcourt Street, he ran across Southwest Corridor Path.

46.   PIEROWAY—dressed in street clothes, with his badge and gun—pursued BURRELL on foot.

6

47. As PIEROWAY exited his vehicle, RESIL yelled: "Get him, P."

48. PIEROWAY and RESIL should have obeyed the orders to terminate the pursuit and still would have been able to identify BURRELL and hold him accountable for his flight from West Rutland Square because BURRELL left his drivers license visible along with other evidence in the Cadillac, which BURRELL abandoned at the scene.

49. RESIL checked the Cadillac to ensure the vehicle was in park.

50. After checking the Cadillac, RESIL—dressed in street clothes, with his badge and radio—joined PIEROWAY's foot chase of BURRELL

51. BURRELL ran left on Carleton Street.

52. BURRELL followed Carleton Street as it veered right to become Yarmouth Street.

53. Once on Yarmouth Street, BURRELL took a left onto Yarmouth Place.

54. PIEROWAY used the same route as he pursued BURRELL.

55. As PIEROWAY chased BURRELL, he yelled commands for BURRELL to cease his flight.

56. PIEROWAY threatened to shoot BURRELLL.

57. PIEROWAY's statements during the foot chase included:

a. "Stop."

7

b.    "Fucking stop."

c.    "Stop. Police. Stop."

d.    "Stop or I will shoot."

e.    "If you don't stop, I will shoot you."

f.    "Stop running or I'm going to fucking kill you."

g.    "Stop reaching"

h.    "Don't reach for your pockets."

i.    "Put your hands where I can see them.  Stop."

j.    "If you reach, I'll shoot.  Stop reaching or I'll shoot."

k.    "You better watch your back."

l.    "I'm gonna fucking shoot you."

58.    Before rounding the corner to Yarthmouth Place, PIEROWAY yelled, "Stop.  I need to see your hands. I'll shoot you." After yelling this, he drew his weapon and continued running in BURRELL's direction.

59.    Once on Yarmouth Place, BURRELL ran towards a door at or near 7 Yarmouth Place.

60.    To reach the door, BURRELL ran up three steps and stood on the landing.

61.    BURRELL attempted to open the door, but it was locked.

62.    On the side of the landing closest to Yarmouth Street was a railing.

63.    Just below the railing were two dumpsters.

8

64. On the side of the landing furthest from Yarmouth Street was a railing.

65. By the time BURRELL reached the door, PIEROWAY had caught up with BURRELL.

66. PIEROWAY, in his street clothes with a drawn weapon, stood at the bottom of the stairs.

67. BURRELL turned towards PIEROWAY.

68. BURRELL slowly took a gun from his waistband and dropped it in the dumpster.

69. PIEROWAY aimed for BURRELL's chest and fired his weapon.

70. The bullet struck BURRELL in the left portion of his rib cage.

71. PIEROWAY shouted at BURRELL, "Stop. Don't make me shoot you again."

72. BURRELL fell backwards.

73. RESIL, near the scene at the time of the shooting, heard the gunshot and PRIEROWAY shout "Don't make me shoot you again."

74. Seconds after PIEROWAY shot BURRELL, RESIL arrived at the scene.

75. When RESIL arrived, PIEROWAY told RESIL that BURRELL had been shot in the chest and BURRELL's gun was in the dumpster.

76. RESIL used his radio to call in a "Code 303," which indicates officer-involved shootings.

77. RESIL did not use his radio to report BURRELL's injury or request Emergency Medical Services ("EMS").

78. PIEROWAY did not ask RESIL to request EMS.

79. Rule 303 of Boston Police Department's Rules and Procedures ("Rule 303"), applicable in August, 2012, forbids discharge of a firearm unless ". . . [t]here is no less drastic means available to defend oneself or another from unlawful attack which an officer has reasonable cause to believe could result in death or great bodily injury . . ." or ". . . [t]here is no less drastic means available to apprehend a fleeing felon . . . ."

80. PIEROWAY violated Rule 303 when he used deadly force against BURRELL; PIEROWAY neither needed to defend himself nor was he apprehending a fleeing felon.

81. Even though BURRELL was lying on the ground with a severe gunshot wound—in no condition to harm the officers—PIEROWAY and RESIL failed to render medical assistance.

82. PIEROWAY and RESIL handcuffed BURRELL, with his hands behind his back.

83. Then, RESIL looked at the gun in the dumpster.

84. After RESIL looked at the gun, he checked BURRELL for weapons.  He found none.

85. Rule 315 of Boston Police Department's Rules and Procedures ("Rule 315"), applicable in August, 2012, provides officers with discretion to abstain from using handcuffs in exigent circumstances.

86. Rule 315 did not prohibit PIEROWAY and RESIL from rendering prompt medical aid to BURRELL.

87. RESIL asked BURRELL to turn over, but BURRELL was unresponsive.

88. RESIL rolled BURRELL onto his side.

89. RESIL saw BURRELL's eyes roll back in his head and heard him gasp for air.

90. Detective Daniel E. MacDonald, Sergeant Detective Donald Keenan, and Officer Brendan O'Donnell arrived on the scene when BURRELL was on his side.

91. After learning that PIEROWAY and RISEL shot BURRELL, Detective MacDonald, Sergeant Detective Keenan, and Officer O'Donnell immediately began to render aid to BURRELL.

92. Sergeant Detective Keenan requested that EMS respond.

93. Officers quickly determined BURRELL was not breathing and had no pulse.

11

94. Sergeant Detective Keenan uncuffed BURRELL and began cardiopulmonary resuscitation ("CPR").

95. Detective MacDonald, Sergeant Detective Keenan, and Officer O'Donnell moved BURRELL to the sidewalk to allow officers to provide proper aid.

96. Sergeant Detective Keenan continued CPR until EMS arrived.

97. BURRELL was transported to Boston Medical Center, where he was pronounced dead.

98. Dr. Henry Nields, Chief Medical Examiner of the Massachusetts Office of the Chief Medical Examiner, performed an autopsy on BURRELL.

99. Dr. Nields determined the cause of death was a gunshot wound to the torso.

100. Dr. Nields determined the manner of death was a homicide.

### COUNT I: BATTERY UPON BURRELL RAMSEY-WHITE

### BY DEFENDANT MATTHEW PIEROWAY

101. The plaintiff adopts, repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though they were fully set forth herein.

102. Defendant PIEROWAY engaged in intentional acts of unlawful conduct directed at BURRELL RAMSEY-WHITE, which resulted in serious injuries causing his death.

103. Defendant PIEROWAY utilized unreasonable, unlawful, and excessive force by shooting BURRELL RAMSEY-WHITE with a gun.

104. BURRELL RAMSEY-WHITE did not consent nor provoke the described contact by Defendant PIEROWAY.

105. The conduct of Defendant PIEROWAY was without legal justification.

106. As a direct and proximate result of the battery perpetrated by Defendant PIEROWAY upon BURRELL RAMSEY-WHITE, BURRELL RAMSEY-WHITE sustained significant physical injuries, pain, and suffering, which resulted in his death.

## COUNT II: ASSAULT UPON BURRELL RAMSEY-WHITE BY DEFENDANTS MATTHEW PIEROWAY AND JOEL RESIL

107. The plaintiff adopts, repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though they were fully set forth herein.

108. Defendants PIEROWAY and RESIL engaged in intentional acts of unlawful conduct directed at BURRELL RAMSEY-WHITE, which reasonably made BURRELL RAMSEY-WHITE

13

apprehensive of immediate physical harm.

109. Defendant PIEROWAY's overt acts included approaching BURRELL in street clothes in an offensive manner, pursuing BURRELL in an unmarked vehicle, shouting verbal threats of physical harm, as well as pointing a gun at BURRELL RAMSEY-WHITE.

110. Defendant RESIL's overt acts included approaching BURRELL in street clothes in an offensive manner and pursing BURRELL in an unmarked vehicle.

111. BURRELL RAMSEY-WHITE did not consent nor provoke the described contact by Defendants PIEROWAY or RESIL.

112. The conduct of Defendants PIEROWAY and RESIL was without legal justification.

113. As a direct and proximate result of the assaults perpetrated by Defendants PIEROWAY and RESIL upon BURRELL RAMSEY-WHITE, BURRELL RAMSEY-WHITE became apprehensive of an immediate physical harm.

## COUNT III: VIOLATION OF THE MASSACHUSETTS CIVIL RIGHTS ACT
### BY DEFENDANT MATTHEW PIEROWAY

114. The plaintiff adopts, repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though they were fully set forth herein.

14

115. Defendant PIEROWAY interfered with BURRELL RAMSEY-
     WHITE'S enjoyment and exercise of his rights protected
     by the constitutions and laws of the United States and
     of the Commonwealth of Massachusetts, by threats,
     intimidation, and coercion designed to interfere with
     BURRELL RAMSEY-WHITE's exercise of his rights to life
     and liberty, to be secure in his person and effects
     from unlawful searches and seizures, and to due process
     of law, as provided, preserved, and protected by the
     Constitution of the United States, including, without
     limitation, the Fourth, Fifth, and Fourteenth
     Amendments, and by the Declaration of Rights of the
     Commonwealth of Massachusetts, including, without
     limitation, the Preamble and Articles I, X, XI, XII,
     and XIV.

116. As a direct and proximate result of defendant
     PIEROWAY's violation of BURRELL RAMSEY-WHITE's civil
     rights, BURRELL RAMSEY-WHITE suffered the damages
     aforesaid, warranting recovery pursuant to G.L. c. 12,
     §11H and §11I.

## COUNT IV: VIOLATION OF THE MASSACHUSETTS CIVIL RIGHTS ACT

### BY DEFENDANTS CITY OF BOSTON, JOEL RESIL,

### MICHAEL MOES 1-10, AND MARY MOES 1-10

117. The plaintiff adopts, repeats, realleges, and

incorporates by reference the allegations set forth in the preceding paragraphs as though they were fully set forth herein.

118. Defendants CITY OF BOSTON, RESIL, MICHAEL MOES 1-10, and MARY MOES 1-10 interfered with BURRELL RAMSEY-WHITE's enjoyment and exercise of his rights protected by the constitutions and laws of the United States and of the Commonwealth of Massachusetts, by enabling, ratifying, and condoning Defendant PIEROWAY's violation of BURRELL RAMSEY-WHITE's rights by threats, intimidation, and coercion designed to interfere with BURRELL RAMSEY-WHITE's exercise of his rights to life and liberty, to be secure in his person and effects from unlawful searches and seizures, and to due process of law, as provided, preserved, and protected by the Constitution of the United States, including, without limitation, the Fourth, Fifth, and Fourteenth Amendments, and by the Declaration of Rights of the Commonwealth of Massachusetts, including, without limitation, the Preamble and Articles I, X, XI, XII, and XIV.

119. As a direct and proximate result of defendants CITY OF BOSTON, RESIL, MICHAEL MOES 1-10, and MARY MOES 1-10 violations of BURRELL RAMSEY-WHITE's civil rights,

16

BURRELL RAMSEY-WHITE suffered the damages aforesaid, warranting recovery pursuant to G.L. c. 12, §11H and §11I.

**COUNT V: VIOLATION OF BURRELL RAMSEY-WHITE'S**

**FEDERAL CIVIL RIGHTS BY DEFENDANT MATTHEW PIEROWAY**

120. The plaintiff adopts, repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though they were fully set forth herein.

121. At all times relevant to this Complaint, BURRELL RAMSEY-WHITE had the rights afforded to him by the Fourth Amendment of the United States Constitution, applied to the Commonwealth of Massachusetts through the Fourteenth Amendment of the United States Constitution, not to have his person or property unlawfully searched, seized, detained in an unreasonable manner; not to be deprived of his life or liberty without due process of law; not to be subjected to excessive force during the course of an alleged stop or an arrest; and not to be unreasonably denied necessary medical treatment.

122. Defendant PIEROWAY violated BURRELL RAMSEY WHITE's constitutional and civil rights in the following manners, *inter alia*:

17

a.   Defendant PIEROWAY pursued BURRELL RAMSEY-WHITE after being ordered to cease pursuit in circumstances where BURRELL RAMSEY-WHITE posed no immediate threat to the safety of others or officers.

b.   After Defendant PIEROWAY chased BURRELL RAMSEY-WHITE to an area without any escape route, BURRELL RAMSEY-WHITE dropped his weapon.  Despite seeing BURRELL RAMSEY-WHITE discard a weapon that could be used to harm others, Defendant PIEROWAY shot BURRELL RAMSEY-WHITE in the chest.

c.   After Defendant PIEROWAY wounded BURRELL RAMSEY-WHITE in the chest, BURRELL RAMSEY-WHITE was in no condition to harm himself or others; nevertheless, Defendant PIEROWAY failed to promptly and efficiently provide or request emergency medical care.  Instead, PIEROWAY slowly handcuffed and searched BURRELL RAMSEY-WHITE, without any consideration for the exigent circumstances of BURRELL RAMSEY-WHITE's medical emergency.

123. At all times relevant herein, Defendant PIEROWAY knowingly acted to deprive BURRELL RAMSEY-WHITE of his constitutional rights set forth above, maliciously and with reckless disregard.

18

124. As a direct and proximate result of the defendant's violation of BURRELL RAMSEY-WHITE's civil rights, BURRELL RAMSEY-WHITE suffered the damages aforesaid, warranting recovery pursuant to 42 U.S.C. §1983 and §1988.

**COUNT VI: VIOLATION OF BURRELL RAMSEY-WHITE'S FEDERAL CIVIL RIGHTS BY DEFENDANT JOEL RESIL**

125. The plaintiff adopts, repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though they were fully set forth herein.

126. At all times relevant to this Complaint, BURRELL RAMSEY-WHITE had the rights afforded to him by the Fourth Amendment of the United States Constitution, applied to the Commonwealth of Massachusetts through the Fourteenth Amendment of the United States Constitution, to not have his person or property unlawfully searched, seized, detained in an unreasonable manner; not to be deprived of his life or liberty without due process of law; not to be subjected to excessive force during the course of an alleged stop or an arrest; and not to be unreasonably denied necessary medical treatment.

127. Defendant RESIL violated BURRELL RAMSEY-WHITE'S
     constitutional and civil rights in the following
     manners, *inter alia*:

     a.  Defendant RESIL aided, encouraged, and joined
         Defendant PIEROWAY in pursuing BURRELL RAMSEY-
         WHITE after being ordered to cease pursuit in
         circumstances where BURRELL RAMSEY-WHITE posed no
         immediate threat to the safety of others or
         officers.

     b.  As soon as he arrived on the scene, RESIL learned
         BURRELL RAMSEY-WHITE had been shot, and BURRELL
         RAMSEY-WHITE's gun was in the dumpster.  Because
         of this wound, BURRELL RAMSEY-WHITE was in no
         condition to harm himself or others; nevertheless,
         Defendant RESIL failed to promptly and efficiently
         provide or request emergency medical care.
         Instead, RESIL slowly handcuffed BURRELL RAMSEY-
         WHITE, approached the dumpster to look at the
         weapon, and searched BURRELL RAMSEY-WHITE, without
         any consideration for the exigent circumstances of
         BURRELL RAMSEY-WHITE's medical emergency.

128. At all times relevant herein, Defendant RESIL knowingly
     acted to deprive BURRELL RAMSEY-WHITE of his
     constitutional rights set forth above, maliciously and

with reckless disregard.

129. As a direct and proximate result of the defendant's violation of BURRELL RAMSEY-WHITE's civil rights, BURRELL RAMSEY-WHITE suffered the damages aforesaid, warranting recovery pursuant to 42 U.S.C. §1983 and §1988.

## COUNT VII: VIOLATION OF BURRELL RAMSEY-WHITE'S FEDERAL CIVIL RIGHTS BY DEFENDANTS MICHAEL MOES 1-10 AND MARY MOES 1-10

130. The plaintiff adopts, repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though they were fully set forth herein.

131. At all times material, defendants MICHAEL MOES 1-10 and MARY MOES 1-10 served as supervising officers of the Boston Police Department, responsible for employing, training, supervising, and disciplining the Boston Police officers who served under their command, and for developing, enforcing, supervising, and maintaining policies, practices, procedures, and customs for training and enforcing federal and Massachusetts criminal laws and procedures, Boston Police Department Rules and Procedures, and pursuit and investigation methods.

21

132. As supervising superior officers, defendants  MICHAEL
     MOES 1-10 and MARY MOES 1-10 developed, enforced,
     supervised, and maintained policies, practices,
     procedures, and customs which exhibited deliberate
     indifference to the constitutional rights of persons in
     Boston, which caused the violations of BURRELL RAMSEY-
     WHITE's rights.

133. It was the policy and/or custom of these defendants to
     inadequately train, supervise, and discipline Boston
     Police officers, including defendant PIEROWAY,
     defendant RESIL, and other officers under their
     commands, in the knowledge of enforcement of federal
     and Massachusetts criminal procedures, Boston Police
     Department Rules and Procedures, and pursuit and
     investigation methods, thereby encouraging violations
     of such laws and procedures by Boston Police officers
     and failing to discourage constitutional violations by
     Boston Police officers.

134. It was the policy, practice, and/or custom of these
     defendants to inadequately investigate citizens'
     complaints of police misconduct and violations of law,
     and acts of misconduct and violations of law instead
     were tolerated by these defendants.

135. As a result of the above described polices, practices, procedures, and customs, Boston Police officers —including, without limitation, Defendants PIEROWAY and RISEL—believed their actions would not be properly monitored by supervising superior officers, and that misconduct would not be investigated or sanctioned, but would be tolerated and ratified instead.

136. The above described policies, practices, procedures, and customs demonstrated deliberate indifference on the part of defendants MICHAEL MOES 1-10 and MARY MOES 1-10 to the constitutional rights of persons within the defendant CITY OF BOSTON, and were the cause of the violations of BURRELL RAMSEY-WHITE's rights alleged herein.

137. Defendants MICHAEL MOES 1-10 and MARY MOES 1-10 violated BURRELL RAMSEY-WHITE's civil rights, protected by the constitutions and laws of the United States and of the Commonwealth of Massachusetts, by the intentional and deliberately indifferent manner in which, pursuant to policy, practice, procedure, and/or custom, they failed and refused to properly instruct, train, supervise, discipline, and command the police officers under their command in knowledge and enforcement of federal and Massachusetts criminal

23

procedures, Boston Police Department Rules and
Procedures, pursuit and investigation methods, and, in
particular, in the manner in which they enabled,
authorized, condoned, sanctioned, and ratified the
Boston Police violations of BURRELL RAMSEY-WHITE's
constitutional and statutory rights to be free from
unlawful searches and seizures, be free from excessive
force during the course of an alleged stop or arrest,
enjoy due process of law, and enjoy and find security
in other constitutional and statutory rights, *inter
alia*.

138. As a direct and proximate result of the defendants'
violations of BURRELL RAMSEY-WHITE's civil rights,
BURRELL RAMSEY-WHITE suffered the damages aforesaid,
warranting recovery pursuant to 42 U.S.C. §1983 and
§1988.

## COUNT VIII: VIOLATION OF BURRELL RAMSEY-WHITE'S FEDERAL CIVIL RIGHTS BY DEFENDANT CITY OF BOSTON

139. The plaintiff adopts, repeats, realleges, and
incorporates by reference the allegations set forth in
the preceding paragraphs as though they were fully set
forth herein.

140. The defendant CITY OF BOSTON developed, enforced,
supervised, and maintained policies, practices,

procedures, and/or customs which exhibited deliberate indifference to the constitutional rights of persons in Boston, which caused the violations of BURRELL RAMSEY-WHITE's rights.

141. It was the policy, practice, and/or custom of the defendant CITY OF BOSTON to inadequately train, supervise, and discipline Boston Police officers, including, without limitation, defendants PIEROWAY, RISEL, MICHAEL MOES 1-10, and MARY MOES 1-10, in the knowledge and enforcement of federal and Massachusetts criminal procedures, Boston Police Department Rules and Procedures, and proper methods of pursuit and investigation, thereby encouraging violations of such laws and procedures by Boston Police officers and failing to discourage constitutional violations by Boston Police officers.

142. The defendant CITY OF BOSTON knew or should have known that defendants PIEROWAY, RISEL, MICHAEL MOES 1-10, MARY MOES 1-10, and other employees of the defendant CITY OF BOSTON, were involved in the formulation and execution of policies, practices, and procedures which illegally abridged the rights and privileges of BOSTON residents.

143. Despite actual or constructive knowledge of the
     aforesaid policies, practices, and procedures of
     defendants PIEROWAY, RISEL, MICHAEL MOES 1-10, MARY
     MOES 1-10, and other employees of the defendant CITY OF
     BOSTON, the defendant CITY OF BOSTON did not stop or
     curtail such misconduct but rather condoned it by
     refusing to correct, discipline, or prevent such
     misconduct.

144. The defendants' acts and omissions, pursuant to
     policies, practices, and customs which were well known
     and widely practiced, constitute conduct under the
     color of law, within the meaning of 42 U.S.C. §1983,
     which deprived BURRELL RAMSEY-WHITE of his statutory
     and constitutional rights and privileges including,
     without limitation, his right to be free from illegal
     searches and seizures, be free from excessive force
     during the course of an alleged stop, and to due
     process of law.

145. It was the policy, practice, and/or custom of the
     defendant CITY OF BOSTON to inadequately investigate
     citizens' complaints of police misconduct and
     violations of law, and acts of misconduct and
     violations of law instead were tolerated by this
     defendant.

26

146. As a result of the above described policies, practices, and customs, Boston Police officers, including defendants PIEROWAY, RISEL, MICHAEL MOES 1-10, and MARY MOES 1-10, believed that their actions would not be properly monitored by the defendant CITY OF BOSTON, and that misconduct would not be investigated or sanctioned, but would be tolerated and ratified instead.

147. The above described policies, practices, and customs demonstrated deliberate indifference on the part of the policy makers of the defendant CITY OF BOSTON to the constitutional rights of persons within the defendant CITY OF BOSTON, and were the cause of the violations of BURRELL RAMSEY WHITE's rights alleged herein.

148. The defendant CITY OF BOSTON violated BURRELL RAMSEY WHITE's civil rights, protected by the constitutions and laws of the United States and of the Commonwealth of Massachusetts, by the intentional and deliberately indifferent manner in which, pursuant to municipal policy, practice, and/or custom, it failed and refused to properly instruct, train, supervise, discipline, and command Boston Police officers in knowledge and enforcement of federal and Massachusetts criminal procedures, Boston Police Department Rules and

27

Procedures, and lawful methods of pursuit and investigation, and, in particular, in the manner in which it enabled, authorized, condoned, sanctioned, and ratified the violations of BURRELL RAMSEY WHITE's constitutional and statutory rights to be free from unlawful searches and seizures, be free from excessive force during the course of an alleged stop, enjoy due process of law, and enjoy and find security in other constitutional and statutory rights.

149. As a direct and proximate result of the defendant CITY OF BOSTON's violation of BURRELL RAMSEY-WHITE's civil rights, BURRELL RAMSEY-WHITE suffered the damages aforesaid, warranting recovery pursuant to 42 U.S.C. §1983 and §1988.

## COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY DEFENDANTS CITY OF BOSTON, PIEROWAY, RISEL, MICHAEL MOES 1-10, AND MARY MOES 1-10

150. The plaintiff adopts, repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though they were fully set forth herein.

151. The violations of state and federal constitutional and statutory law committed by defendants PIEROWAY, RISEL, MICHAEL MOES 1-10, and MARY MOES 1-10, public servants

who are employed to enforce the laws, acting on behalf of and with the authorization, approval, and ratification of the defendant CITY OF BOSTON, in the circumstances described herein, including without limitation, the illegal search and seizure of BURRELL RAMSEY-WHITE, the use of excessive and deadly force against BURRELL RAMSEY-WHITE, and the numerous violations of BURRELL RAMSEY-WHITE's constitutional and statutory rights to due process of law, constitute extreme and outrageous conduct beyond all bounds of decency which is utterly intolerable in a civilized society.

152. As a direct and proximate result of the tortuous misconduct of defendants CITY OF BOSTON, PIEROWAY, RISEL, MICHAEL MOES 1-10, and MARY MOES 1-10, BURRELL RAMSEY-WHITE suffered the damages aforesaid.

## **RELIEF SOUGHT**

WHEREFORE, the plaintiff respectfully demands judgment against the defendants, jointly and severally, in an amount to be determined by a jury to serve as compensatory damages, plus a multiple of that amount as permitted by statute and common law to serve as punitive and/or as multiple damages in addition to the compensatory damages, plus costs, interest and reasonable attorney's fees as allowed by law, plus such other and further

29

relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

THE PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY ON ALL COUNTS OF HER COMPLAINT.

Respectfully submitted,
By the plaintiff,

CARLA SHEFFIELD, as Personal
Representative of the ESTATE OF
BURRELL RAMSEY-WHITE
24 Centre Avenue
#1L
Dorchester, MA 02124
857-222-6272
August 20, 2015

**CIVIL ACTION COVER SHEET**

SUPERIOR COURT DEPARTMENT
COUNTY OF   SUFFOLK

DOCKET NO. 15-2511F

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| **CARLA SHEFFIELD, Personal Representative of the Estate of BURRELL RAMSEY-WHITE** | **CITY OF BOSTON, MATTHEW PIEROWAY, JOEL RESIL, MICHAEL MOES 1-10, and MARY MOES 1-10** |

| | | |
|---|---|---|
| Plaintiff Atty | Carla Sheffield (Pro Se) | Type Defendant's Attorney Name |
| Address | 24 Centre Avenue, #1L | Defendant Atty |
| | | Address |
| City | Dorchester  State MA  Zip Code 02124 | City  State  Zip Code |
| Tel. | +1 (857) 222-6272   BBO# | |

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

CODE NO.        TYPE OF ACTION (specify)        TRACK          IS THIS A JURY CASE?

E17 Civil Rights Act G L c 12, s 11H - Average Track        ⊙ ] Yes  ○ ] No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A.   Documented medical expenses to date:
    1. Total hospital expenses                                     $
    2. Total doctor expenses                                       $
    3. Total chiropractic expenses                                 $
    4. Total physical therapy expenses                             $
    5. Total other expenses (describe)                             $
                                                        Subtotal   $
B.   Documented lost wages and compensation to date               $
C.   Documented property damages to date                          $
D.   Reasonably anticipated future medical expenses               $
E.   Reasonably anticipated lost wages and compensation to date   $
F.   Other documented items of damages (describe)
                                                                  $

G.   Brief description of plaintiff's injury, including nature and extent of injury (describe)

The defendants violated the civil rights of the plaintiff's decedent, BURRELL
RAMSEY-WHITE, in various manners alleged in the Complaint, including, without   Total $
limitation, by using excess force by shooting him to death. Jurisdiction lies
exclusively in the Superior Court pursuant to G.L. c. 12, §11H and §11I.

RECEIVED

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

FILED 20 2015
SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE                                    TOTAL    $..............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR
COURT DEPARTMENT

None.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC
Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the
advantages and disadvantages of the various methods."

Signature of Attorney of Record  _Carla Sheffield_        Date:   August 20, 2015
A.O.S.C. 3-2007

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET # **SUCV2015-02511-F**
**Courtroom CtRm 1006, 3 Pemberton Square, Boston**

RE:   **Sheffield Per Rep v Boston et al**

TO:   Carla Sheffield Per Rep
      24 Centre Ave
      Dorchester Center, MA 02124

## SCHEDULING ORDER FOR  A  TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue by **08/04/2018**

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 11/18/2015 | 11/18/2015 | |
| Response to the complaint filed (also see MRCP 12) | | 12/18/2015 | |
| All motions under MRCP 12, 19, and 20 | 12/18/2015 | 01/17/2016 | 02/16/2016 |
| All motions under MRCP 15 | 10/13/2016 | 11/12/2016 | 11/12/2016 |
| All discovery requests **and depositions** served and non-expert depositions completed | 08/09/2017 | | |
| All motions under MRCP 56 | 09/08/2017 | 10/08/2017 | |
| Final pre-trial conference held and/or firm trial date set | | | 02/05/2018 |
| Case shall be resolved and judgment shall issue by **08/04/2018** | | | **08/04/2018** |

- **The final pre-trial deadline is <u>not the scheduled date of the conference</u>.**
- **You will be notified of that date at a later time.**
- **Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

Dated: 08/27/2015

Michael Joseph Donovan
Clerk of the Court

Telephone: 617-788-8131