United States District Court
District of Massachusetts

|                                        |     |
| -------------------------------------- | --- |

Carla Sheffield,

       Plaintiff,

       v.

Mathew Pieroway and Joel Resil,

       Defendants.

Civil Action No.
15-14174-NMG

**MEMORANDUM & ORDER**

**GORTON, J.**

This suit arises out of the plaintiff's claims that two police officers violated Burrell Ramsey-White's constitutional rights under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act. Specifically, plaintiff, on behalf of the deceased Ramsey-White, alleges that the officers unreasonably seized him and used excessive force in violation of the Fourth Amendment, among other claims. The two officers have since moved for summary judgment.

**I.  Background**

    **A. Factual Background**

In August, 2012, defendants Mathew Pieroway ("Pieroway") and Joel Resil ("Resil") were on duty and in plain clothes with the Boston Police Department's Anti-Crime Unit when they

responded to a call concerning an African American male with a
red t-shirt peering into parked vehicles in Greenwich Park.
Burrell Ramsey-White ("Ramsey-White"), an African American male,
was driving a Cadillac with tinted windows in the same area.
Although Ramsey-White had not committed any traffic infractions
and did not match the description of the suspect peering into
parked vehicles, Resil ran the Cadillac's license plate against
a law enforcement database and the officers followed Ramsey-
White.  Shortly thereafter, the officers discovered that the
owner of the Cadillac, Jurrell Laronal, had an outstanding
default warrant and pulled over the Cadillac.

The officers approached the vehicle from both sides and
Pieroway asked Ramsey-White for his license and registration.
Ramsey-White asked Pieroway why he had been stopped but Pieroway
ignored the question and again asked Ramsey-White for his
license and registration.  Ramsey-White provided his license to
Pieroway and again asked why he had been stopped.  Pieroway did
not respond or examine Ramsey-White's license.  Eventually,
Resil looked at the license and realized that it did not match
the identification of the vehicle owner but failed to convey
that information to Pieroway or Ramsey-White.

Without making any effort to determine whether Ramsey-White
was the individual whose name appeared on the warrant, Pieroway
decided to arrest Ramsey-White for "questioning the officers'

orders" and ordered him to get out of the car.  Ramsey-White
turned off the engine but did not get out, again asked what he
had done wrong and, at some point, reached behind the center
console towards the floorboards of the backseat.  Without
responding to Ramsey-White's questions, Pieroway pulled on the
locked door and then reached into the car through the open
driver's side window while Resil, who was on the passenger side
of the car, put his hand on his holstered firearm.  As Pieroway
began to reach into the car, Ramsey-White started the car,
closed the window and drove away.  The officers returned to
their car and pursued Ramsey-White's vehicle.

Although the Boston Police Department Operations Supervisor
instructed Pieroway and Resil to terminate the pursuit, the
officers ignored the order.  Ramsey-White eventually abandoned
the car and fled on foot but he had left his license behind so
that the officers could identify him.  Pieroway got out of his
car and gave chase while Resil checked the Cadillac to ensure
that it was parked before joining Pieroway's pursuit of Ramsey-
White.  As Pieroway chased Ramsey-White, he yelled repeatedly
for Ramsey-White to stop running, to put his hands where
Pieroway could see them and threatened to shoot Ramsey-White if
he failed to do so.  Ramsey-White did not respond to Pieroway's
commands and continued to flee.  Eventually, Pieroway caught up

to Ramsey-White with his weapon drawn.  When Ramsey-White turned

toward Pieroway, he shot Ramsey-White in the chest.

As Resil approached the scene, he heard the gunshot and

Pieroway shout "don't make me shoot you again".  Pieroway

informed Resil that Ramsey-White had been shot in the chest and

that Ramsey-White's weapon was in a dumpster nearby.  Resil used

his radio to report the officer-involved shooting but did not

report Ramsey-White's injury or request Emergency Medical

Services (EMS).  Ramsey-White was handcuffed and patted down for

weapons.  After the pat down, Resil told Ramsey-White to turn

over but he was unresponsive.

Shortly thereafter, three other Boston police officers

arrived on the scene, called for EMS and began to administer

first aid to Ramsey-White.  Ramsey-White was transported to

Boston Medical Center where he was pronounced dead.

### B. Procedural Background

In 2015, Carla Sheffield ("Sheffield" or "the plaintiff"),

as the personal representative of the estate of Ramsey-White,

filed a complaint under 42 U.S.C. § 1983 and the Massachusetts

Civil Rights Act ("the MCRA") against the City of Boston, Mathew

Pieroway, Joel Resil and several unidentified defendants in

Suffolk Superior Court.  The City of Boston removed the action

to this Court and filed a motion to dismiss.  Shortly

thereafter, plaintiff filed an amended complaint which alleges

1) battery against Officer Pieroway (Count I), 2) assault against Officers Pieroway and Resil (Count II), 3) MCRA violations by Officer Pieroway (Count III), 4) MCRA violations by Officer Resil (Count IV), 5) federal civil rights violations by Officer Pieroway (Count V), 6) federal civil rights violations by Officer Resil (Count VI) and 7) intentional infliction of emotional distress ("IIED") by all defendants (Count IX).

In 2017, this Court adopted Magistrate Judge Kelley's Report and Recommendation, which dismissed the claim against the City of Boston (Count VIII).  One year later, defendants Pieroway and Resil filed separate motions for summary judgment that are now pending before this Court.

## II.  **Legal Analysis**

### A. Legal Standard

The role of summary judgment is to assess the proof in order to see whether there is a genuine need for trial. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". Id.

If the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the nonmoving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322–23.

**B. Resil's Motion for Summary Judgment (Docket No. 84)**

Resil moves to dismiss all claims against him, specifically the claims of 1) assault (Count II), 2) MCRA violations (Count IV), 3) federal civil rights violations (Count VI) and 4) intentional infliction of emotional distress (Count IX).

**1. Federal Constitutional Claims (Count VI)**

In the amended complaint, plaintiff alleges that Resil violated Ramsey-White's federal constitutional rights by 1)

seizing Ramsey-White in violation of the Fourth Amendment, 2)
denying Ramsey-White medical treatment in violation of the
Eighth and Fourteenth Amendments, 3) using excessive force
against Ramsey-White in violation of the Fourth Amendment and 4)
subjecting him to unequal treatment in violation of the
Fourteenth Amendment.

### a. Seizure, Exit Order and Pursuit

Resil argues that the seizure and pursuit claims should be
dismissed because this Court already found the actions of the
officers to be constitutional when it dismissed the City of
Boston as a party to this suit. See Docket No. 67.  This Court
agrees with the analysis set forth in the Report and
Recommendation issued by Magistrate Judge Kelley, which found
that the officers did not violate the Fourth Amendment with
respect to the initial stop of the car ("the seizure"), the exit
order or the pursuit. See Docket No. 62; Pennsylvania v. Mimms,
434 U.S. 106, 111 (1977) (holding that officers may order a
driver or passenger out of vehicle that has been lawfully
stopped for a traffic violation absent reasonable suspicion);
Cty. of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) (holding
that the Fourth Amendment only covers "searches" and "seizures"
and that a police pursuit in attempting to seize a person does
not amount to a "seizure" within the meaning of the Fourth
Amendment).

Accordingly, Resil's motion for summary judgment as to the federal constitutional claims stemming from the initial seizure, exit order and pursuit will be allowed.

### b. Medical Care

Plaintiff has since conceded her claim that Resil failed to provide medical care to Ramsey-White when he was injured while apprehended by police. Accordingly, summary judgment with respect to the failure to provide medical care in violation of the Due Process Clause will be allowed.

### c. Excessive Force

Plaintiff alleges that Resil is liable for Pieroway's excessive force under a joint venture theory of liability because Resil 1) remained silent about the officers' misidentification of Ramsey-White throughout the course of the initial stop up until the shooting and 2) encouraged Pieroway to continue following Ramsey-White during the pursuit. In effect, plaintiff argues that but-for Resil's silence and encouragement, Pieroway would not have used excessive force in detaining Ramsey-White.

Resil responds that he cannot be held liable for Pieroway's actions because he was not present when Pieroway discharged his firearm, never un-holstered his firearm and did not see Pieroway engage with Ramsey-White during the foot pursuit. Thus, Resil

contends that he never knew that Pieroway would use force, let
alone deadly force.

Personal participation by an individual in the deprivation
of a constitutional right is not required to establish liability
under § 1983, so long as plaintiff establishes the requisite
causal connection. Gutierrez-Rodriguez v. Cartagena, 882 F.2d
553, 561 (1st Cir. 1989). That causal link may be established
if the defendant sets in motion a series of acts by others which
the actor knows or reasonably should know would cause others to
inflict the constitutional injury. Id. Moreover, an officer who
is present at the scene of an arrest and fails to take
reasonable steps to protect the victim of another officer's use
of excessive force can be held liable under § 1983 for his
nonfeasance, provided that he had a "realistic opportunity" to
prevent the other officer's actions. Martinez v. Colon, 54 F.3d
980, 985 (1st Cir. 1995). Mere presence by the non-offending
officer does not, however, establish joint venture liability.
Wilson v. Town of Mendon, 294 F.3d 1, 15 (1st Cir. 2002).

Viewing the entire record in the light most favorable to
the nonmoving party, plaintiff has alleged facts sufficient to
state a claim of excessive force against Resil who could have,
and perhaps should have, deescalated the encounter that led to
the shooting. In support of that claim, plaintiff has
demonstrated that Resil 1) knew that Ramsey-White and the

- 9 -

vehicle owner (who had the outstanding warrant) were not one and the same, 2) failed to notify Pieroway of that misidentification and 3) encouraged Pieroway to pursue Ramsey-White, despite an order from a superior officer to terminate the pursuit.

Because a reasonable jury could conclude that Resil had a realistic opportunity to prevent the use of excessive force, his motion for summary judgment with respect to the use of excessive force in violation of the Fourth Amendment will be denied.

### d. Equal Protection Claim

Plaintiff, in her opposition to Resil's motion for summary judgment, submits that she will not be pursing her equal protection claim because

> [D]iscovery did not produce evidence of misconduct . . . and the dismissal of her municipal and supervisory liability claims precluded discovery on that issue.

Opposition of Plaintiff at 17 n. 3.

Accordingly, Resil's motion for summary judgment on plaintiff's discontinued equal protection claim will be allowed.

### 2. Assault Claim (Count II)

Plaintiff contends that her arguments with respect to joint venture liability under the federal excessive force claim also support her state law assault claim. When a plaintiff alleges both a § 1983 excessive force claim and common law claim for assault and battery, the determination of the reasonableness of the force used under § 1983 controls the common law assault and

battery claim. <u>Raiche</u> v. <u>Pietroski</u>, 623 F.3d 30, 40 (1st Cir. 2010).  Because this Court has determined that plaintiff has a viable excessive force claim against Resil, plaintiff's assault claim survives as well.

Accordingly, Resil's motion for summary judgment with respect to the alleged assault will be denied.

### 3. MCRA Claim (Count IV)

To establish a claim under the MCRA, the plaintiff must prove that the exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth has been interfered with, or attempted to be interfered with, by threats, intimidation or coercion. <u>Bally</u> v. <u>Ne. Univ.</u>, 532 N.E.2d 49, 51–52 (1989).

With respect to the allegations that the officers violated Ramsey-White's civil rights during the seizure, the parties dispute the scope of an officer's authority to order an individual out of his or her vehicle (<u>i.e.</u>, an exit order) under Massachusetts law.  In <u>Commonwealth</u> v. <u>Gonsalves</u>, the Massachusetts Supreme Judicial Court ("SJC") rejected the <u>Mimms-Wilson</u> rule set forth by the U.S. Supreme Court, which allows officers to order a driver or passenger out of vehicle that has been lawfully stopped for a traffic violation absent reasonable suspicion.  The SJC held, conversely, that once a stopped driver has produced the necessary papers which are found to be in

order, the driver and any passengers must be promptly released. Com v. Gonsalves, 711 N.E.2d 108, 115 (1999). Only if the officer has established a reasonable basis to justify an exit order or search based on safety concerns will such an exit order be upheld. Id. at 112-13.

Plaintiff argues that Gonsalves applies here and that once Resil knew that Ramsey-White was not the subject of the warrant, authority for seizing the vehicle ceased and the officers' additional investigation was unreasonable absent additional justification. She contends that Ramsey-White's nervousness, evasiveness and failure to produce registration did not provide justification for protracting the seizure and that Pieroway's refusal to look at Ramsey-White's license is evidence that the officers did not fear for their safety.

Resil responds that there is no underlying federal constitutional violation and that Gonsalves does not apply because 1) Pieroway, not Resil, ordered Ramsey-White out of the car and 2) the officers had reasonable suspicion to pull over Ramsey-White. Assuming Gonsalves does apply, however, Resil contends that the officers had reasonable safety concerns that justify the exit order. Finally, Resil submits that plaintiff has provided no evidence that the officers engaged in threats, intimidation or coercion.

Neither the Court nor the parties dispute the validity of the initial traffic stop because the officers reasonably believed that the driver of the vehicle had an outstanding warrant.  As such, the Court limits its consideration to the validity of the exit order under Massachusetts law.  In the Commonwealth, there are three scenarios under which an exit order issued to a passenger in a validly stopped vehicle is justified: 1) an objectively reasonable concern for the safety of the officer, 2) reasonable suspicion that the passenger is engaged in criminal activity and 3) "pragmatic reasons" which would justify a warrantless search under the automobile exception. Com. v. Cruz, 945 N.E.2d 899, 906–07 (2011) (quoting Com v. Gonsalves, 711 N.E.2d 108, 115 (1999)).

Plaintiff has alleged facts sufficient for a reasonable jury to conclude that the officers were not justified in ordering Ramsey-White to get out of the car under any of the three scenarios.  With respect to officer safety, Ramsey-White's nervousness and evasiveness do not rise to the level of reasonable suspicion. Com v. Cordero, 74 N.E.3d 1282, 1289-90 (2017).  Despite the fact that Ramsey-White did not produce the vehicle registration, there is no evidence that the officers had a reasonable suspicion of criminal activity because they concede that Ramsey-White committed no traffic violations either before

or during the stop.[1]  Moreover, any alleged safety concern should
have been relieved once Resil realized that the driver did not
have an outstanding warrant.  Finally, there is no evidence that
the officers had probable cause to conduct a warrantless search
under the automobile exception to the warrant requirement.
Accordingly, a reasonable jury could conclude that the officers
were not justified in ordering Ramsey-White out of the car.

     The analysis does not, however, stop there.  To prevail
under the MCRA, plaintiff must also demonstrate that defendant
engaged in the use of threats, intimidation or coercion.
Viewing the entire record in the light most favorable to the
nonmoving party, plaintiff has proffered enough evidence to
support an inference that Resil interfered with or attempted to
interfere with Ramsey-White's constitutional rights through
threats, intimidation or coercion.  Neither Resil nor Pieroway
informed Ramsey-White why they had pulled him over, despite
repeated inquiries.  The officers approached the vehicle from
both sides and, at one point, Resil placed his hand on his
holstered firearm during the interaction.  A reasonable jury
could conclude that the officers' surrounding presence, display
of weaponry and non-responsiveness amounted to a threat or
intimidation under the MCRA.  <u>Planned Parenthood League of</u>

---

[1] Of course, the officers did have reasonable suspicion when
Ramsey-White fled but that is after the fact.

- 14 -

<u>Massachusetts, Inc.</u> v. <u>Blake</u>, 631 N.E.2d 985, 990 (1994)
(holding that "threat" involves the intentional exertion of
pressure to make another fearful or apprehensive of injury or
harm and "intimidation" involves putting in fear for the purpose
of compelling or deterring conduct); <u>see</u> <u>also</u> <u>Brown v. Sweeney</u>,
526 F. Supp. 2d 126, 134 (D. Mass. 2007) (same).

Accordingly, because a reasonable jury could conclude that
the exit order was unjustified and that Resil engaged in
intimidation at the time, Resil's motion for summary judgment
with respect to plaintiff's MCRA claim will be denied subject to
a qualified immunity analysis.

### 4. Intentional Infliction of Emotional Distress Claim (Count IX)

To prevail on an intentional infliction of emotional
distress ("IIED") claim, plaintiff must show that 1) Resil
intended to inflict emotional distress or that he knew or should
have known that emotional distress was the likely result of his
conduct, 2) Resil's conduct was "extreme and outrageous", 3)
Resil's actions caused plaintiff's distress, and 4) plaintiff's
emotional distress was severe. <u>Agis</u> v. <u>Howard Johnson Co.</u>, 355
N.E.2d 315, 318–19 (1976).

Notwithstanding the fact that plaintiff has not identified
what conduct in particular caused the alleged emotional
distress, there is no evidence in the record that Resil's

actions were "extreme and outrageous" or "beyond all possible bounds of decency". At most, Resil remained silent about Ramsey-White's misidentification, placed his hand on his holstered weapon when his partner began questioning Ramsey-White, participated in the pursuit of Ramsey-White after he fled and arrested Ramsey-White after the shooting. There is no evidence of an unlawful arrest or extreme and outrageous conduct toward Ramsey-White by Resil during the encounter and subsequent arrest.

Accordingly, Resil's motion for summary judgment with respect to plaintiff's IIED claim will be allowed.

### 5. Qualified Immunity

Resil asserts that he is entitled to qualified immunity, which plaintiff opposes. The First Circuit applies a three-part test when determining if qualified immunity applies: 1) whether the plaintiff's allegations, if true, establish a constitutional violation, 2) whether the constitutional right at issue was clearly established at the time of the putative violation and 3) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right. Cox v. Hainey, 391 F.3d 25, 29–30 (1st Cir. 2004); see also Duarte v. Healy, 537 N.E.2d 1230, 1232 (1989) (concluding that the contours of qualified immunity with respect to the MCRA

are intended to be coextensive with § 1983). If all three questions are answered in the affirmative, qualified immunity is not warranted. Guillemard-Ginorio v. Contreras-Gomez, 490 F.3d 31, 38 (1st Cir. 2007).

### a. Excessive Force

The first question is easily decided in plaintiff's favor because her allegations establish violations under the Fourth Amendment and the state law corollary of assault and battery. As to the second question of clearly established law, the plaintiff has pointed to a "consensus of cases of persuasive authority" that broadcasts "a clear signal to a reasonable official" that the conduct in question "falls short of the constitutional norm". McKenney v. Mangino, 873 F.3d 75, 81 (1st Cir. 2017).

Specifically, in the context of excessive force, courts have held a bystander officer liable for acts of excessive force provided his acts are a proximate cause of plaintiff's injuries. See, e.g., Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989) (holding a non-shooting officer liable for another officer's shooting under joint venture liability); Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 207 n.3 (1st Cir. 1990) (holding that an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held

liable under § 1983 for his nonfeasance); <u>Wilson</u>, 294 F.3d at 15 (a constitutional duty to intervene may arise if onlooker officers are instrumental in assisting the actual attacker to place the victim in a vulnerable position); <u>Howe</u> v. <u>Town of N. Andover</u>, 854 F. Supp. 2d 131, 143 (D. Mass. 2012) (holding that police officers are likewise on notice that they have an affirmative duty to intervene to prevent excessive force when they have the means and opportunity to do so); <u>Melear</u> v. <u>Spears</u>, 862 F.2d 1177, 1186 (5th Cir. 1989) (holding a police officer liable under § 1983 where he guarded a door during the commission of an illegal search by other officers); <u>Gagnon</u> v. <u>Ball</u>, 696 F.2d 17, 21 (2d Cir. 1982) (holding that an officer, in declining to intercede on plaintiff's behalf and who assisted in the unlawful detention, was liable).

As to the third question, this Court finds that, if the facts were as plaintiff claims them to be, Resil had fair warning that a Fourth Amendment violation was imminent. <u>See</u> <u>Cady</u> v. <u>Walsh</u>, 753 F.3d 348, 359-60 (1st Cir. 2014) (holding that a district court's pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on either an issue of fact or an issue perceived by the trial court to be an issue of fact).

Accordingly, the Court finds that Resil is not entitled to qualified immunity with respect to joint venture liability for excessive force.

### b. Exit Order

Courts have discretion when considering qualified immunity and are not required to follow the three-step inquiry chronologically. <u>Pearson</u> v. <u>Callahan</u>, 555 U.S. 223, 236 (2009) (courts should be permitted to exercise their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first).

With respect to the second prong of clearly established law, the Court finds that plaintiff has not met its burden of demonstrating that an officer who was present but did not order a passenger to get out of the vehicle can be held liable for invoking an unconstitutional exit order. <u>See</u> <u>White</u> v. <u>Pauly</u>, 137 S. Ct. 548, 552 (2017) (reiterating that "clearly established law" must be "particularized" to the facts of the case).

Accordingly, Resil is entitled to qualified immunity as to the exit order but not as to the claims for excessive force.

### C. Pieroway's Motion for Partial Summary Judgment (Docket No. 87)

Pieroway moves for partial summary judgment with respect to plaintiff's MCRA claims against him (Count III) and all federal constitutional violations, except for the alleged excessive force claim (Count V).[2]

#### 1. Federal Constitutional Claims (Count V)

##### a. Seizure, Exit Order and Pursuit

As the Court has explained previously, it finds no Fourth Amendment violation with respect to the initial stop of the car ("the seizure"), the exit order or the pursuit.

##### b. Medical Care and Equal Protection Claims

Plaintiff has not specifically raised a medical care or equal protection claim in her opposition to Pieroway's motion for summary judgment, and the Court assumes, consistent with plaintiff's position with respect to Resil, that she waives this argument for purposes of summary judgment.

Accordingly, Pieroway's motion for partial summary judgment with respect to all federal claims other than the excessive force claim will be allowed.

---

[2] Pieroway concedes that there exists a material dispute of fact with respect to the excessive force claim.

## 2. MCRA Claim (Count III)

This Court has dismissed plaintiff's federal civil rights claims with respect to 1) the seizure, the exit order and the pursuit, 2) the medical care received at the time of the arrest and 3) the equal protection violation.  Thus, plaintiff's only remaining claims against Pieroway are her claims with respect to the exit order under Massachusetts law and for excessive force (as to which Pieroway does not seek summary judgment).

The Court adopts its prior analysis and concludes that there is a genuine issue of material fact as to whether the officers had reasonable suspicion to justify the exit order.  In fact, plaintiff's claim is stronger with respect to Pieroway because 1) he specifically chose not to look at Ramsey-White's license, 2) declined to inform Ramsey-White of why he was being ordered out of the car and arrested, 3) ordered Ramsey-White out of the car and 4) forcibly attempted to open the car door without explanation.

Moreover, Pieroway concedes that there is a genuine issue of material fact with respect to the excessive force claim and plaintiff has proffered evidence that Pieroway made threatening remarks to Ramsey-White moments before Pieroway discharged his weapon.  Thus, plaintiff has presented an issue for the jury with respect to her exit order and excessive force claims.

Accordingly, Pieroway's motion for partial summary judgment will be denied as to the exit order and the claims for excessive force under the MCRA.[3]

### 3. Qualified Immunity

Pieroway contends that he is entitled to qualified immunity.  The Court finds that he is not so entitled as to any of the remaining claims because 1) plaintiff has alleged a violation under Massachusetts law, 2) Massachusetts law makes clear that officers cannot order an individual out of his car without a reasonable safety concern and 3) a reasonable officer in his position would not have ordered Ramsey-White out of the car without first confirming his identity as the individual with an outstanding warrant. <u>See</u> <u>Cox</u>, 391 F.3d at 29-30.  Pieroway has not argued qualified immunity with respect to the alleged excessive force and thus the Court need not address that issue.

---

[3] Although Pieroway does not move for summary judgment with respect to the MCRA claim of excessive force, plaintiff addresses that claim in her opposition.

**ORDER**

For the foregoing reasons, defendant Resil's motion for summary judgment (Docket No. 84) is **ALLOWED** with respect to:

1) the seizure, exit order and pursuit claims under the Fourth Amendment;

2) the medical care claim under the Eighth and Fourteenth Amendments;

3) the equal protection claim under the Fourteenth Amendment;

4) the IIED claim under Massachusetts law; and

5) the exit order claim under Massachusetts law.

With respect to the excessive force and assault and battery claims, Resil's motion for summary judgment is **DENIED**.

Defendant Pieroway's motion for partial summary judgment (Docket No. 87) is, with respect to the federal constitutional claims other than the excessive force claim, **ALLOWED,** but is otherwise **DENIED**.


**So ordered.**


_/s/ Nathaniel M. Gorton____
Nathaniel M. Gorton
United States District Judge

Dated February 22, 2019